# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### AUGUST SESSION, 1998

**FILED**

December 31, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **BRUCE EDWARD LITTLE,** | ) | **C.C.A. NO. 01C01-9710-CR-00461** |
| | ) | |
| Appellant, | ) | |
| | ) | **DAVIDSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. WALTER C. KURTZ, JUDGE** |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee. | ) | **(POST-CONVICTION)** |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**JONATHAN COLE**                          **JOHN KNOX WALKUP**
Baker, Donelson,                         Attorney General & Reporter
Bearman & Caldwell
1700 Nashville City Center             **KAREN M. YACUZZO**
511 Union Street                         Assistant Attorney General
P.O. Box 190613                          2nd Floor, Cordell Hull Building
Nashville, TN 37219                      425 Fifth Avenue North
                                         Nashville, TN 37243

                                         **VICTOR S. JOHNSON, III**
                                         District Attorney General

                                         **JOHN C. ZIMMERMAN**
                                         Assistant District Attorney General
                                         Washington Square
                                         222 Second Avenue North, Suite 500
                                         Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Petitioner, Bruce Edward Little, appeals as of right from the trial court's dismissal of his petition for post-conviction relief following an evidentiary hearing. In his issues on appeal, the Petitioner argues that the indictment was constitutionally defective because it failed to allege a proper mens rea, he was denied the effective assistance of counsel at trial, evidence used against him at trial was seized pursuant to an invalid search warrant, and the post-conviction trial court should have recused himself from presiding over the post-conviction hearing. After review of the record, the briefs filed on behalf of the parties, and the applicable law, we affirm the judgment of the trial court.

Following a jury trial, Petitioner was convicted in the Davidson County Criminal Court of conspiracy to deliver over thirty (30) grams of cocaine, delivery of over thirty (30) grams of cocaine, and possession with intent to deliver over thirty (30) grams of cocaine. The facts of the case are set forth in this court's opinion of the direct appeal from those convictions. State v. Little, 854 S.W.2d 643 (Tenn. Crim. App. 1992). The supreme court denied Petitioner's application for permission to appeal on October 26, 1992, and he timely filed his petition for post-conviction relief on August 21, 1995.

Only the Petitioner and his trial counsel testified at the post-conviction hearing. Petitioner testified that he retained Dale Quillen of the Nashville Bar to represent him in the pending charges. However, Mike Flanagan, who practiced law with Mr. Quillen, actually represented Petitioner pre-trial and at the trial. He denied

consenting to being represented by Mr. Flanagan, and specifically stated that he wanted Mr. Quillen to be his lawyer. Petitioner complained that Mr. Flanagan conducted no pre-trial investigation and did not speak with any witnesses. He stated that Mr. Flanagan did not call any witnesses to testify on his behalf either at the trial or at the sentencing hearing. Furthermore, Petitioner asserted that Mr. Flanagan only talked to him once or twice in a year and a half prior to trial, and never discussed defense strategy with Petitioner.

Mr. Flanagan testified that he was licensed to practice law in Tennessee in 1981. After being in private practice in East Tennessee for approximately two years, he moved to Nashville and worked in the legal office of the Department of Safety. In 1986 he returned to private practice in the law offices of Mr. Quillen. Prior to Petitioner's trial, Mr. Flanagan had been involved in twelve to fourteen criminal jury trials. At the Department of Safety, his specific duties involved representing various state agencies in forfeiture proceedings wherein vehicles had been seized pursuant to applicable drug laws.

On a regular basis, Mr. Flanagan assisted Mr. Quillen in representation of clients who had retained Mr. Quillen. Due to his particular expertise in seizure matters, Mr. Flanagan immediately became involved in representing Petitioner regarding the seizure of certain of Petitioner's property as a result of his arrest. Flanagan relayed that he and Quillen had spoken with Petitioner about Flanagan representing Petitioner, and Petitioner gave his consent. In fact, Petitioner told Mr. Flanagan that he wanted Flanagan to represent him. Flanagan also recalled that he met with Petitioner on several occasions, at least ten (10) to fifteen (15) times to discuss the case. Mr. Flanagan testified that he had obtained all discovery he was

lawfully entitled to receive prior to the jury trial. He gained knowledge about the State's case at the forfeiture hearing and well as in formal discovery. Flanagan stated that he discussed all aspects of the case with Petitioner prior to trial.

David Clark was a co-defendant of Petitioner who testified for the State at Petitioner's trial. Flanagan recognized that his best available defense was to thoroughly cross-examine Clark. He felt that if the jury believed Clark, Petitioner would be convicted, and conversely, if the jury did not believe Clark, Petitioner would likely be acquitted. Petitioner admitted to Flanagan that he obtained the drugs from the motel, taken the drugs to this home, and had given the drugs to another co-defendant. Therefore, under Mr. Flanagan's plan of defense strategy, putting the Petitioner on the stand to testify was not an option. In fact, according to Flanagan, Petitioner did not want to testify. Flanagan acknowledged that Petitioner did not advise him of other transactions involving Mr. Clark, to which Mr. Clark testified at trial.

Petitioner asked Flanagan to have the executive director of the YMCA testify on this behalf at the sentencing hearing concerning Defendant's character. Flanagan interviewed this witness, who initially spoke well of Petitioner. However, he admitted that his opinion would be different if he knew that Petitioner had been convicted in a case involving that much cocaine. According to Flanagan, Petitioner never gave him any names of potential witnesses for the trial itself. Flanagan estimated his preparation time for the trial, including participation in the civil forfeiture hearing, to be a minimum of forty (40) hours.

SUFFICIENCY OF INDICTMENT

Petitioner was charged in three (3) of the four (4) counts of the indictment along with various co-defendants. The counts of the indictment wherein Petitioner was charged alleged as follows:

## COUNT ONE

### JANUARY TERM, 1990, CRIMINAL COURT

THE GRAND JURORS of Davidson County, Tennessee, duly impaneled and sworn, upon their oath, present that:

Bruce Edward Little, Trina Lavelle Thompson, Charles John Miller, Shannon R. Benton, Rose Adell Flynn and David Ray Clark on the 28th day of June, 1989, in Davidson County, Tennessee and before the finding of this indictment, unlawfully and feloniously did conspire to deliver thirty (30) grams or more of a substance containing cocaine, a Schedule II controlled substance, and in furtherance of said conspiracy did commit one or more of the following overt acts:

1. Defendants Charles John Miller and Shannon R. Benton went to the residence of defendant Trina Lavelle Thompson to buy approximately ½ kilogram of cocaine;

2. Defendant Bruce Edward Little transported approximately ½ kilogram of cocaine from room 215 of the Econo Lodge, which was occupied by the said Rose Adell Flynn and David Ray Clark, to the residence of Trina Lavelle Thompson;

3. Defendant Trina Lavelle Thompson and Bruce Edward Little retained the profits from the drug transaction;

in violation of Tennessee Code Annotated § 39-6-417(c) and against the peace and dignity of the State of Tennessee.

## COUNT TWO

And the Grand Jurors aforesaid, upon their oath aforesaid, do further present that the said Bruce Edward Little, Trina Lavelle Thompson, Charles John Miller, Shannon R. Benton, Rose Adell Flynn and David Ray Clark on the day and year aforesaid, in the county aforesaid, unlawfully and feloniously did deliver thirty (30) grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Tennessee Code Annotated § 39-6-417(c) and against the peace and dignity of the State of Tennessee.

## COUNT FOUR

And the Grand Jurors aforesaid, upon their oath aforesaid, do further present that the said Bruce Edward Little, Rose Adell Flynn and David Ray Clark on the day and year aforesaid, in the county aforesaid, unlawfully did possess with intent to deliver thirty (30) grams or more of a substance containing cocaine, a Schedule II controlled substance, said possession occurring at room 215 at the Econo Lodge, 1400 Brick Church Pike, in violation of Tennessee Code Annotated § 39-6-417(c) and against the peace and dignity of the State of Tennessee.

All of the counts in the indictment alleged a violation of Tennessee Code Annotated section 39-6-417(b)(4)(c)(1) (Repealed 1990). The pertinent portion of that statute provides as follows:

Except as authorized by §§ 39-6-401 — 39-6-419 and Title 53, chapter 11, parts 3 and 4, it shall be unlawful and shall constitute a Class X felony for a person to knowingly manufacture, deliver, sell or possess with intent to manufacture, deliver, sell, or for two (2) or more persons to conspire to manufacture, deliver or sell or possess with intent to manufacture, deliver or sell the following controlled substances in the following amounts:

* * *

(E)  Thirty (30) grams or more of any substance containing cocaine.

Petitioner alleges that the counts of the indictment are void because the culpable mental state of "knowingly" is not alleged in any of the counts. Tennessee Code Annotated section 40-30-203 provides that relief under the Post-Conviction Act "shall be granted when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." As stated in State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997), "the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee to the accused the right to be informed of the nature and cause of the accusation."

The constitutional requirement that the culpable mental state must be alleged is satisfied if it can be inferred from the nature of the criminal conduct alleged. Hill, 954 S.W.2d at 729. The offenses for which Petitioner was convicted were alleged to have been committed prior to the effective date of the 1989 revisions of the Criminal Code, effective November 1, 1989. Our supreme court has held that the analysis of Hill is as applicable to convictions under the Act prior to 1989 as it is to convictions for acts committed after the effective date of the new Act. Dykes v. Compton, _____ S.W.2d _____, No. 02S01-9711-CC-00105, slip op. at 3, Lake County (Tenn., at Nashville, September 21, 1998).

Count 1 of the indictment alleges conduct that the Petitioner "unlawfully and feloniously did conspire" to deliver thirty (30) grams or more of a substance containing cocaine and, in furtherance of the conspiracy, he transported approximately ½ kilogram of cocaine from a motel room registered to two (2) of his co-defendants to the residence of another co-defendant. Furthermore, count 1 alleged that Petitioner and another co-defendant retained profits from the transaction. Count 4 of the indictment includes allegations that the Petitioner "did possess with intent to deliver" thirty (30) grams or more of a substance containing cocaine. Count 2 of the indictment alleges in part that the Petitioner "unlawfully and feloniously did deliver thirty (30) grams or more of a substance containing cocaine." Each count of the indictment alleged that the actions of the Petitioner were in violation of Tennessee Code Annotated section 39-6-417(c). When read in their entirety, the three (3) counts of the indictment wherein Petitioner was charged with criminal actions provide sufficient facts from which the culpable mental state of "knowingly" can be inferred. Especially taken in light of the fact that there was a

specific reference to the statute allegedly violated, the Petitioner was supplied with more than ample notice of the offense charged. Dykes v. Compton, slip op. at 3.

We, therefore, decline to grant relief to Petitioner on this issue.

SEARCH WARRANT

In this issue, Petitioner asserts that evidence was seized pursuant to an invalid search warrant directing a search of the premises located at 3524 Chesapeake Drive. The search warrant and affidavit filed for issuance of the warrant were made an exhibit at the hearing. There was not a motion filed to suppress evidence seized as a result of execution of the search warrant prior to Petitioner's trial. Tennessee Code Annotated section 40-30-210(f) provides in part that "[t]here is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived." The precise issue of whether the search warrant was issued and/or executed in violation of Petitioner's constitutional rights regarding search and seizure law is therefore waived since there is no evidence to rebut the statutory presumption. However, Petitioner has included in his allegations of ineffective assistance of counsel the failure of his trial attorney to file a motion to suppress evidence seized pursuant to the search warrant.

In addition to the search warrant which was made an exhibit, the only testimony at the post-conviction hearing concerning trial counsel not filing a motion to suppress is as follows. During cross-examination of trial counsel, the following testimony was elicited:

-8-

Q.   And, Mr. Flanagan, you asserted no objection prior to trial to the search that was conducted of Mr. Little's residence, did you?

A.   I'm not sure what you're asking about, no objection.

Q.   Did you move to suppress --

A.   No, I did not file a motion to suppress.

Q.   But the other defendants in this case did, didn't they?

A.   Not to my search they didn't. They may have filed their own motions to suppress in other areas. But there was no reason to file a motion to suppress in Mr. Little's situation.

During his direct examination in rebuttal, the Petitioner testified as follows on this issue:

Q.   Mr. Little, why are you upset about Mr. Flanagan's failure to move to suppress this evidence obtained by the search warrant?

A.   Because when I looked at the motion for discovery it said that Mr. Miller [co-defendant] said he don't know where the drugs come from. He don't know where they come from. But when Mr. Flanagan had, Phillip [Taylor], the vice detective on the stand and he asked him about that, he said that's what lawyers have to go by is the motion for discovery. And it said on the -- on the search warrant it said that Mr. Miller made statements that he didn't -- that he made statements and said he got it from me. But in the search warrant -- on the motion --

Q.   On the motion for discovery?

A.   Yeah, on the motion for discovery it says he don't know where them drugs come from. And he didn't get it from Mr. Little. But on the search warrant it said that he said he got them from Mr. Little. And Mr. Flanagan asked Mr. [Taylor] on the stand about that and he said, well, I thought he said that Mr. Rigsby said -- he thought he said that, but he didn't say that.

In his brief, Petitioner argues that the affidavit in support of the search warrant did not establish probable cause to justify the search because it was based

upon an anonymous tip which failed to satisfy the requirements of State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), which adopted the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 112 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It is true that the affidavit does contain information provided by an unknown informant. However, the trial court found, and we agree, that the affidavit contains substantial information in addition to recitation of anonymous phone calls which, when read together, establish probable cause for issuance of the search warrant. Furthermore, there is no proof in the record that the failure to file a motion to suppress in this case was outside the range of competence demanded of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

Petitioner also makes the conclusory argument that there are fraudulent misrepresentations made in the affidavit filed in support of issuance of the search warrant. He bases this upon language in the search warrant affidavit that "Charles Miller [co-defendant] made statements against his penal interest to Officer Ed Rigsby that he had gotten the cocaine from Bruce Little at 3524 Chesapeake Drive." Petitioner concludes that this is a fraudulent or reckless misrepresentation based upon a portion of the State's response to Petitioner's motion for discovery filed by the assistant district attorney some six (6) months after the search warrant affidavit was filed. The discovery response states in part as follows, "[t]he defendant Miller stated to Officer Taylor that he didn't know anything about the cocaine. Then Miller stated that some man at the house gave the one-half (½) kilogram of cocaine to him but denied knowing his identity or the reason for the delivery of the cocaine."

The assistant district attorney general who filed the discovery response did not testify at the post-conviction hearing. In fact, it was the same assistant district attorney general who represented the State during the post-conviction hearing. Mr. Flanagan was not questioned about purported conflicting statements made by the co-defendant Miller. Officer Taylor, who signed the affidavit in support of the search warrant and would be the most logical person to question regarding any inconsistency or contradictions, did not testify. In short, Petitioner provided woefully inadequate proof in support of his contention that trial counsel was ineffective by failing to move to suppress evidence obtained pursuant to the search warrant. As stated by the State in its brief, due to the dearth of evidence contained in the record, this court is unable to know whether the officer's statement in the affidavit is false or whether the assistant district attorney was mistakenly provided with incomplete or inaccurate information by a third party.

We are unable to grant Petitioner relief on this issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to his complaint that trial counsel was ineffective for not filing a motion to suppress evidence seized pursuant to the search warrant, Petitioner asserts that his trial counsel was ineffective for the following reasons:

(a)    Counsel failed to raise the issue of deficiency of the indictment.

(b)    Counsel failed to call any witnesses or present any proof to rebut the State's case to offer a plausible defense, or to present a reasonable doubt in the minds of the jury.

(c)     Trial counsel was ineffective in making his opening statement which allowed the trial court to permit introduction of prejudicial evidence against petitioner.

(d)     Trial counsel failed to object to statements made by the prosecutor during closing arguments which Petitioner classifies as "prosecutorial misconduct."

Regarding the first ground of ineffective assistance of counsel, we have previously determined in this opinion that the indictment was not deficient. Therefore, trial counsel cannot be said to have been ineffective for failing to raise an issue that is found to be without merit.

In post-conviction relief proceedings, Petitioner has the burden of proving the allegation in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983) (citations omitted).

In reviewing the Petitioner's Sixth Amendment claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694, 104 S.Ct. 2052, 2064, 2067-68, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d

864 (1984). While Petitioner does not identify in this brief the names or proposed testimony of any potential witnesses other than himself, he did testify at the hearing that he wanted the executive director of the YMCA and his wife to testify to certain matters at the trial and/or sentencing hearing. However, even though the witnesses could apparently have been easily subpoenaed to testify at the post-conviction hearing, Petitioner did not present the testimony of any witness whom he says trial counsel should have produced at the trial. As stated by our court in Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990):

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness.

Petitioner argues that because trial counsel asserted in his opening statement that "the State is going to try to convince you, merely by his [Petitioner] presence in this circle, that he should be found guilty," that this opened the door for evidence to be admitted at trial which would have otherwise been inadmissible. There is no proof in the record that the complained-of evidence would not have been admissible absent the opening statement by trial counsel. In fact, the trial court found in its memorandum opinion and order dismissing the petition for post-conviction relief that "[t]he issue of the Petitioner's intent was at the very center of this case and would remain so whatever was said in the opening statement. 'Other

crimes' evidence would still have been admissible." We agree with the trial court's conclusion.

Finally, Petitioner asserts that his trial counsel was ineffective by not objecting to statements made by the prosecutor during closing arguments which Petitioner classifies as "prosecutorial misconduct."

The issue of "prosecutorial misconduct" during the State's closing argument was raised by Petitioner's appellate counsel on the direct appeal. Our court held that this issue was waived for failure to make an objection during the argument, but nevertheless stated:

> Waiver notwithstanding, the appellant's objection is without merit. The prosecutor did not state anything that was untrue. There was no evidence in the record that the appellant was simply purchasing cocaine for his own use. The prosecutor may have mischaracterized the point of the defense attorney's closing argument, but that is not prosecutorial misconduct. We see nothing improper about the prosecutor's statement. This issue is without merit.

State v. Little, 854 S.W.2d at 651.

Even if we were to assume in arguendo that trial counsel was deficient in not objecting to the prosecutor's closing argument, he has failed to show any resulting prejudice. If the issue of prosecutorial misconduct had been objected to and properly raised on appeal, it is obvious that it would not have changed the outcome of the trial or resulted in a new trial for Petitioner.

MOTION TO RECUSE

-14-

Petitioner argues that the trial court was biased against him and should have recused himself after Petitioner filed a motion to recuse. Petitioner asserts that he currently has a civil lawsuit pending against the trial court seeking over $2,000,000.00 in damages. Furthermore, Petitioner contends that the trial court's communication with the Department of Correction regarding whether Petitioner was entitled to work release was in excess of his judicial authority and demonstrated his bias against the Petitioner.

A motion for recusal based upon the alleged bias or prejudice of the trial court addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995), cert. denied, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996) (citations omitted). A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned. Id., (citing State v. Cash, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993); Lackey v. State, 478 S.W.2d 101, 104 (Tenn. Crim. App. 1978)).

The trial court in this case stated that he was not prejudiced against the Petitioner in any way. In his order declining to recuse himself, the trial court stated as follows:

> The petitioner has moved the undersigned Judge to recuse himself relying on the fact that the petitioner has filed a damage action against the Judge in federal court. The undersigned was unaware of this Civil Rights lawsuit until informed of it in the motion filed. The Court, however, has no personal animosity against this petitioner as he is one of thousands of criminal defendants who have passed through this Court in the last fourteen (14) years and many criminal defendants file Civil Rights suits naming the State Trial Judge as the defendant. The

-15-

fact that he has filed a lawsuit against the Judge is not a deciding factor in whether the Judge recuses himself. (citations omitted).

At the hearing for the petition for post-conviction relief, the trial court further reasoned that "looking at him [Petitioner] right now I don't recognize him. I don't have any feelings about him one way or the other . . . . But I didn't even know I was sued until you told me. We still don't know it other than you told me." On the issue of the court's correspondence with the Department of Correction, Petitioner admitted at the hearing that the trial court actually sent the letter to the Department of Correction after receiving a request for his input regarding the appropriateness of work release for the Petitioner.

As the Petitioner bears the burden of proving a clear abuse of discretion by the trial court in denying the motion to recuse himself, he has failed to include either a copy of the trial court's letter to the Department of Correction or any verification of his civil rights action against the trial court. There is no indication in the record that the trial court, subjectively or objectively, had any bias or prejudice against the Petitioner such that his impartiality might be questioned. On the contrary, all the evidence within the record demonstrates the trial court's objectivity in determining the outcome of Petitioner's motions and petition. Recusal is not required in the case sub judice based upon the facts before this court, and this issue is without merit.

We affirm the trial court's order dismissing the petition for post-conviction relief.

_____
THOMAS T. WOODALL, Judge

-16-

CONCUR:

(See separate dissent)
JOHN H. PEAY, Judge

_____
L.T. LAFFERTY, Special Judge